# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**AGRI SYSTEMS**,<br><br>Debtor. | Case No. **04-60069-11** |
| **AGRI-SYSTEMS**,<br><br>Plaintiff.<br><br>-vs-<br><br>**THE HARTFORD INSURANCE GROUP**, **HARTFORD FIRE INSURANCE COMPANY**, **HARTFORD SPECIALTY COMPANY**, and **TWIN CITY FIRE INSURANCE COMPANY**,<br><br>Defendants. | Adv No. **07-00029** |

## *MEMORANDUM of DECISION*

At Butte in said District this 18th day of October, 2007.

In this Adversary Proceeding, after due notice, a hearing was held August 30, 2007, in Billings on the Motion to Dismiss filed on June 11, 2007, by Hartford Insurance Group, Hartford Fire Insurance Company, Hartford Specialty Company and Twin City Fire Insurance Company (collectively referred to as "Hartford"), together with the Debtor/Plaintiff's objection thereto. Hartford was represented at the hearing by attorney Doug James of Billings, Montana and the Debtor was represented at the hearing by attorney Jon E. Doak, also of Billings, Montana. At the

1

hearing, attorneys James and Doak made arguments to the Court, but the Court did not hear any testimony from witnesses and no exhibits were offered into evidence. This memorandum contains the Court's findings of fact and conclusions of law.

## BACKGROUND

A voluntary Chapter 11 bankruptcy petition was filed on behalf of the Debtor on January 14, 2004. Debtor's bankruptcy Schedules and Statement of Affairs did not disclose any claim against Hartford. According to Debtor, Debtor's Schedules and Statement of Affairs did not disclose a claim against Hartford because "there was no ripe claim against Hartford at the time for breach of its duty to defend and indemnify under [Debtor's] prepetition commercial liability insurance policy."

Debtor filed a Plan of Reorganization and Partial Liquidation, and a Disclosure Statement on December 29, 2004, along with a Supplement to Debtor's Disclosure Statement of December 29, 2004, on February 4, 2005. Debtor's Plan of Reorganization and Partial Liquidation provides in part:

7. **Disallowed Claim** shall mean:

\* \* \*

(B) *Claims As to Which Objections Are Filed*. Any claim as to which a proof of claim has been filed and served before the bar date applicable thereto, but as to which: (i) Debtor has filed and served an objection, in accordance with applicable provisions of the Code, Bankruptcy Rules, or order of the Court, within sixty (60) days of the date of entry of the Court's order confirming the Plan, to which objection the creditor has not timely responded; or (ii) Debtor has filed and served an objection, in accordance with applicable provisions of the Code, Bankruptcy Rules, or order of the Court, within sixty (60) days of the date of entry of the Court's order confirming the Plan, and the Court has, after notice and hearing, deemed disallowed by an order that has become final and no longer appealable[.]

\* \* \*

>    10. 02 **Jurisdiction Retained by Court**. The Court shall retain jurisdiction of the
> Debtor and its operations subsequent to confirmation for the following purposes:
>    (a) Allowing claims and hearing objections thereto;
>    (b) Adjudicating any adversary proceedings now pending or commenced pursuant to this Plan;
>    (c) Allowing and approving the payment of administrative expenses;
>    (d) Determining and resolving any defaults under the Plan;
>    (e) Modifying the Plan pursuant to Section 1127 (b) of the Code;
>    (f) Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan;
>    (g) Issuing any order necessary to carry out the purposes and intent of the Plan
>    (h) Determining any issues of dischargeability.

Debtor's Plan goes on to define Glass "G" creditors as "all of the general unsecured claims of third party creditors unrelated to the Debtor, subject to disposition of objections and allowance, including the . . . approximately $122,000 claimed owing to Hartford Insurance Company for a general liability premium for 2003, calculated after filing of Debtor's Petition, which is disputed as to amount and Hartford's basis of calculation[.]"

Following a hearing held June 7 and 8, 2005, the Court entered an Order on June 10, 2005, denying confirmation of Debtor's Plan of Reorganization and Partial Liquidation. The Court's Order of June 10, 2005, directed Debtor to, in part, amend its Plan of Reorganization and Partial Liquidation to reclassify Hartford Insurance as a priority creditor consistent with Proof of Claim No. 60 filed by "Hartford Fire Insurance Company, as assignee of Hartford Specialty Company" on October 26, 2004, which asserted a total claim of $164,066.00, of which $123,279.00 was listed as priority debt.

As directed, Debtor filed an Amended Plan or Reorganization and Partial Liquidation on June 23, 2005. The Amended Plan reflected in part that "pursuant to testimony introduced during the Confirmation Hearing, Debtor acknowledged that the amended proof of claim of

Hartford Fire Insurance Company, as assignee of Hartford Specialty Company, filed with the Court October 26, 2004, will be deemed an allowed Class F unsecured priority claim to the extent of $123,279.00 in such claim for prepetition workers compensation premiums, with the balance asserted to be a general unsecured claim and subject to post-confirmation determination by the Court as to allowance and amount pursuant to testimony introduced during the Confirmation Hearing, Debtor acknowledged that the amended proof of claim of Hartford Fire Insurance Company, as assignee of Hartford Specialty Company, filed with the Court October 26, 2004, will be deemed an allowed Class F unsecured priority claim to the extent of $123,279.00 in such claim for prepetition workers compensation premiums, with the balance asserted to be a general unsecured claim and subject to post-confirmation determination by the Court as to allowance and amount." Said Amended Plan also provides that the Claim of Hartford Fire Insurance Company, as assignee of Hartford Specialty Company, in the amount of $123,279.00, referenced in the amended proof of claim filed October 26, 2004, for workers compensation insurance premiums on Agri-Systems' employees during the period 1/10/03-1/10/04, determined due Hartford after a post-petition audit of work comp premiums paid by Agri-Systems during 2003, shall be deemed an Allowed Unsecured Priority Claim in such amount ($123,279.00). The $40,837.00 balance set forth in the Hartford amended proof of claim, asserted to be general unsecured (not entitled to priority), shall treated in accordance with the Class G general unsecured claims under the Amended Plan; and remains disputed by the Debtor as to basis and amount."

Following another confirmation hearing, Debtor filed a Second Amended Plan of Reorganization and Partial Liquidation on September 9, 2005. Debtor's Second Amended Plan

4

of Reorganization and Partial Liquidation did not change the treatment of Hartford and was confirmed by Order entered October 7, 2005. As contemplated by Paragraph 7(B) of Debtor's confirmed Second Amended Plan, Debtor filed an Omnibus Objection to Proofs of Claim on December 6, 2005, objecting to numerous proofs of claim. Debtor's Omnibus Objection included the following objections:

> Claim No. 60
> Claimant:   Hartford Insurance
> Amount of claim: $164,066.00
> Objection:   AgriSystems is owed a refund for overpayments in the amount of $17,787.00, which Hartford cannot offset under the code. Hartford's claim should be amended as follows:
> 
> | | |
> |---|---:|
> | 2003 WCC (priority unsecured) | $123,279.00 |
> | 2004 WCC (priority unsecured) | $  3,052.00 |
> | | $126,331.00 |
> | | |
> | 2003 (general unsecured) | $ 40,787.00 |
> | 2004 (general unsecured) | $  2,614.00 |
> | | $ 43,401.00 |
> 
> General unsecured portion of Claim No. 60 is disputed as overstated and subject to preference/turnover claim by Debtor's estate in amount not less than $17,787.00.

and

> Claim No. 60
> Claimant: PA Dept of Revenue
> Objection:   Duplicative. Amended by Claim No. 63

On December 20, 2007, the Court entered an Order denying Debtor's Objection to the alleged Proof of Claim No. 60 filed by the Pennsylvania Department of Revenue on the basis that Proof of Claim No. 60 was filed by Hartford and not the Pennsylvania Department of Revenue. The Court, however, sustained Debtor's Objection to Proof of Claim No. 60 filed by Hartford.

Debtor subsequently commenced this Adversary Proceeding on April 17, 2007, asserting

5

a breach of contract claim and an objection to claim based upon the following background facts:

> 8. During the period from 2000 to the Petition Date and after the Petition Date into 2004, Agri-Systems' general liability insurance coverage in connection with its construction operations was pursuant to policies issued by Hartford through the Flynn Insurance Agency in Billings, Montana.
>
> 9. Throughout 2003 and until after the Petition Date in 2004, Agri-Systems' workers compensation and employers liability insurance coverage in connection with its operations throughout the United States was pursuant to policies issued by Hartford through the Flynn Insurance Agency.
>
> 10. Under the terms of its Hartford general liability policy, Agri-Systems' premiums were payable in advance based upon the company's estimate of gross covered payroll, subject to adjustment after audit following completion of the policy year; with Agri-Systems liable for additional premiums in arrears if the actual covered payroll exceeded the projected payroll, and Agri-Systems entitled to a refund in the event the actual covered payroll was lower than projected.
>
> 11. Under the terms of its Hartford workers compensation policy, Agri-Systems' premiums were payable in advance based upon the company's estimate of covered payroll, subject to adjustment after audit following completion of the policy year; with Agri-Systems liable for additional premiums in arrears if the actual covered payroll exceeded the projected payroll, and Agri-Systems entitled to a refund in the event the actual covered payroll was lower than the projected payroll.
>
> 12. As of the Petition Date, Agri-Systems was unable to accurately determine the amount in additional premiums for 2003 workers comp/employers' liability or general liability insurance coverage owed Hartford, and listed Hartford on Agri-Systems' Schedule D as holding a general unsecured claim, contingent and unliquidated, in an estimated amount of $199,105.90.
>
> 13. On about January 30, 2004, Hartford, in the name of "Hartford Fire Insurance Company, as Assignee of Special Risk Services", filed its initial proof of claim in Agri-Systems' Chapter 11, alleging that Hartford had a general unsecured claim that was "Contingent/Unliquidated", in an amount that was not stated in the proof of claim.
>
> 14. On about October 20, 2004, Hartford, in the name of "Hartford Fire Insurance Company, as Assignee of Hartford Specialty Company", filed an Amended Proof of Claim in the aggregate amount of $164,066.00, alleging an unsecured priority claim in the amount of $123,279.00 for workers compensation insurance premiums on policy no. WEQT0823, and a general unsecured claim in the amount of $40,787.00 for general liability insurance premiums on policy no. CQT0824.

15. Following the filing of Hartford's amended proof of claim, Agri-Systems advised Hartford and its Montana agent that Agri-Systems had overpaid its 2004 general liability insurance premiums and was entitled to a refund from Hartford; and Hartford has acknowledged such overpayment and acknowledged in writing that Agri-Systems is entitled to a refund of $11,454.00.

16. Despite demand, Hartford failed and refused to refund the overpaid premiums to Agri-Systems.

17. Between the Petition Date and June, 2005, Hartford represented to Agri-Systems that the workers compensation premiums in Hartford's Amended Proof of Claim had been accurately determined by Hartford based upon post-petition audit of Agri-Systems' 2003 payroll.

18. On or about June 1, 2005, Hartford represented to Agri-Systems that Agri-Systems' unpaid workers compensation premiums were entitled to treatment as an unsecured priority claim.

19. Without knowledge of the accuracy, truth or falsity of Hartford's representations regarding its amended claim for workers compensation premiums, and in reasonable reliance on such representations, Agri-Systems agreed on about June 5, 2005, to stipulate to allowance of an unsecured priority claim in Hartford of $123,279.00; reserving Agri-Systems' objections to Hartford's general unsecured claim set forth in the amended proof of claim.

20. On about October 10, 2005, the Court entered its order confirming Agri-Systems' Second Amended Plan of Reorganization and Partial Liquidation ("the Plan").

21. The Plan, as confirmed, provided for payment in full of all allowed general unsecured and unsecured priority claims; and Section X of the Plan provided that the Court would retain jurisdiction over Agri-Systems' post-confirmation objections to allowance of claims.

22. On about December 1, 2005, Agri-Systems filed and served upon its creditors and parties in interest Agri-Systems' Omnibus Objection to Proofs of Claim ("Claims Objection").

23. In its Claims Objection, Agri-Systems objected to Hartford's general unsecured claim for general liability insurance premiums as overstated.

24. By its order entered December 17, 2005, the Court sustained Agri-Systems' objection to Hartford's October, 2004 Amended Proof of Claim.

25. In a document entitled "Statement of Premium Adjustment-Final" which Agri-

Systems received July 31, 2006, Hartford advised Agri-Systems that, based upon a post-petition audit conducted by Hartford in September, 2005 of Agri-Systems' prepetition covered payroll, Agri-Systems owed Hartford $84,115.00 in prepetition workers compensation premiums, not the $123,279.00 in such premiums previously represented by Hartford to Agri-Systems and stated in Hartford's October, 2004 Amended Proof of Claim.

26. Notwithstanding Hartford's acknowledgment that Agri-Systems is entitled to $11,454.00 in refunds for overpaid premiums; Hartford's September, 2005 audit of prepetition premiums; the Court's December, 2005 Order sustaining Agri-Systems' objection to Hartford's Amended Proof of Claim; and/or Hartford's July, 2006 Final Statement referenced above, Hartford has at no time filed with the Court or served on Agri-Systems a Second Amended Proof of Claim reducing the amounts claimed owing by Agri-Systems for either general liability insurance premiums or workers compensation premiums.

### *RELEVANT BACKGROUND FACTS REGARDING COAST GRAIN CASE*

27. Under the provisions of its general liability policy with Hartford, which was in effect throughout the period 2000 through 2003 while Agri-Systems was working on a construction project for Coast Grain Company in Madera County, California ("the Coast Grain Project"), Hartford agreed to defend and indemnify Agri-Systems against claims made for property damage due to nonintentional acts of the insured within the scope of the policy.

28. On about November 27, 2002, Greg Braun, as Chapter 11 Bankruptcy Trustee of the Coast Grain Company, filed suit against Agri-Systems in the United States District Court for the Eastern District of California, titled *Greg Braun, Chapter 11 Trustee for the Coast Grain Company vs. Agri-Systems*, Case No. CIV-F-02-6482-AWI-LJO (E.D. Cal.)("the Coast Grain suit"); alleging in the Complaint negligence, breach of contract, breach of express and implied warranties, breach of confidentiality agreement, and for declaratory judgment arising from or in connection with Agri-Systems' work on the Coast Grain Project.

29. Among the counts in its November, 2002 Complaint, Coast Grain alleged property damage caused by Agri-Systems' purported negligence; allegations of claims within the scope of Agri-Systems' liability insurance policy with Hartford.

30. Within a reasonable time following service of the Coast Grain Complaint, Agri-Systems provided Hartford with a copy of such Complaint and requested defense of the Coast Grain suit pursuant to the terms of Agri-Systems' general liability insurance policy.

31. Hartford declined Agri-Systems' request to defend Agri-Systems in the Coast Grain suit.

32. Agri-Systems proceeded with its own defense of the Coast Grain suit, initially through the Law of Office of Henry Nunez in Fresno, California; incurring about $107,545.59 in fees and costs in connection with Coast Grain before Agri-Systems' Chapter 11 petition was filed in January, 2004.

33. After the Petition Date, Agri-Systems' retention of Doak & Associates as its bankruptcy counsel was approved by the Court, after notice to all creditors and opportunity for hearing.

34. In May, 2004, Agri-Systems' retention of the Nunez firm in connection with the Coast Grain suit was approved by the Court, without objection, after notice to creditors, including Hartford.

35. On about April 30, 2004, Doak & Associates submitted to the Court, on notice to creditors and parties in interest (including Hartford), its First Application for Professional Fees and Costs, covering the period January 14 through March 31, 2004, which included about 8.2 hours at $150.00 per hour in connection with Coast Grain. There were no objections filed.

36. The Court entered its order on about June 1, 2004 approving the Doak First Application.

37. On about December 3, 2004, Doak & Associates submitted to the Court, on notice to all creditors and parties in interest (including Hartford), its Second Application for Professional Fees and Costs, covering the period from April 1 through September 30, 2004. Included in the application was a request for fees for about 15.10 hours at $150.00 per hour in connection with Coast Grain.

38. The Doak Second Application was approved by the Court by Order entered on about December 16, 2004, after notice and hearing. Hartford filed no objection to the Second Application.

39. Agri-Systems paid the fees and costs approved on the Doak First and Second Applications.

40. On about February 7, 2005, after Hartford was notified and declined to attend, Agri-Systems participated in an unsuccessful mediation conference in connection with the Coast Grain case.

41. In April, 2005, Agri-Systems, represented by Doak & Associates, litigated Coast Grain's motion for estimation of its claim against Agri-Systems' estate–what constituted in effect a preliminary trial on the issues in the Coast Grain case--in a three day hearing before the Bankruptcy Court.

42. On about July 18, 2005, Doak & Associates submitted to the Court, on notice

to creditors and parties in interest, its Third Application for Professional Fees and Costs, covering the period from October 1, 2004 through June 30, 2005. Included in the Third Application was a request for payment of fees for 334.50 hours at $150.00 per hour in connection with the Coast Grain suit, with 28.30 hours not charged, and an additional approximately 35 hours in preparation for and participation in the April, 2005 estimation hearing concerning Coast Grain's claims.

43. On about August 1, 2005, after substantial discovery had been conducted in the Coast Grain suit, Agri-Systems had litigated Coast Grain's motion for estimation and provided Hartford with the hearing transcript, Hartford advised Agri-Systems Hartford would defend Agri-Systems in the Coast Grain suit, effective as of February 11, 2005, under a reservation of rights.

44. The Doak Third Application was approved by the Court, after notice and hearing, by Order entered on about August 24, 2005. There was no Hartford objection filed.

45. Agri-Systems paid the amount approved by the Court on the Doak Third Application.

46. Hartford subsequently reimbursed Agri-Systems for only $26,190.00 of the approximately $55,515.00 in fees and costs in connection with Coast Grain approved on the Doak Third Application, refusing to reimburse any fees or costs incurred before 2/11/05, or any fees or costs incurred after 2/11/05 in connection with estimation of the Coast Grain claim.

47. On about December 15, 2005, Agri-Systems moved the Bankruptcy Court to approve Agri-Systems' retention of Mark D. Parker, Parker, Heitz and Cosgrove, P.C., of Billings, Montana, as additional co-counsel with the Nunez Firm and Doak & Associates in connection with the Coast Grain suit, at the billing rates and upon the terms set forth in such application.

48. Following notice served on all creditors and parties in interest, including Hartford, and an opportunity for objection, the Court issued its order on about December 28, 2005, approving Agri-Systems' retention of Mark Parker, Parker, Heitz & Cosgrove, as co-counsel on the terms set forth in Agri-Systems' motion. Hartford filed no objection to retention of the Parker firm.

49. Mark D. Parker, Parker Heitz & Cosgrove, was admitted *pro hoc vice* in the Eastern District of California as Agri-Systems' co-counsel in the Coast Grain case.

50. On about January 13, 2006, there was filed with the Court, on notice served on all creditors and parties in interest, including Hartford, the First Application for

10

Professional Fees and costs of the Law Offices of Henry Nunez, covering the period from January 14, 2004, through November 15, 2005. Included in the Nunez First Application was a request for payment of $62,661.50 in fees and $33,895.00 in costs incurred in connection with Coast Grain.

51. After notice and opportunity for hearing, the Court approved the Nunez First Application by order entered on about January 25, 2006. There were no objections filed.

52. Despite demand, no portion of the fees and costs approved on the Nunez First Application and paid by Agri-Systems has been reimbursed by Hartford.

53. On about April 21, 2006, there was filed with the Bankruptcy Court, on notice served on all creditors and parties in interest, including Hartford, the Fourth Application of Doak & Associates for Professional Fees and Costs, covering the period from July 1, 2005, through February 28, 2006. Included in the Doak Fourth Application was a request for payment for 528.2 hours at $150.00 per hour in connection with the Coast Grain suit, $912.50 in costs incurred connection with the Coast Grain suit, and 65.70 hours at $150.00 per hour in connection with Coast Grain's appeal (for strategic purposes in the Coast Grain suit) of confirmation of Agri-Systems' Plan.

54. The Court entered its order on about May 10, 2006, after notice and opportunity for hearing, approving the Doak Fourth Application. There were no objections filed.

55. Agri-Systems paid the fees and costs approved on the Doak Fourth Application.

56. Hartford subsequently reimbursed Agri-Systems $75,427.49 of the approximately $80,142.49 in fees and costs in the Doak Fourth Application on the Coast Grain suit; refusing reimbursement of any fees incurred after 2/09/06 in the Coast Grain suit and $200.00 of the costs, refusing reimbursement of any fees related to Coast's motion for allowance of administrative claim, and refusing reimbursement of any fees related to the Coast Grain appeal.

57. On about May 26, 2006, on virtually the eve of trial and after Agri-Systems had incurred substantial time, attorneys fees and costs through the Nunez Firm, Doak & Associates, and the Parker firm in preparation for trial and in securing partial summary judgment on key elements of the Coast Grain Complaint, a full and final settlement of the Coast Grain suit was negotiated, subject to the Bankruptcy Court's approval.

58. Upon information and belief, the amounts paid Agri-Systems under the settlement agreement were reduced by several hundred thousand dollars because

11

of Coast Grain's claims of property loss and repair expenditures due to Agri-Systems' negligence. Under the settlement, the parties bore their respective fees and costs.

59. The Coast Grain settlement agreement was approved by the Court, after notice and opportunity for hearing, in its Order entered on about June 26, 2006. There were no objections filed.

60. In August, 2006, following the Court's approval of the Coast Grain settlement, there were filed with the Court, on notice served on all creditors and parties in interest, including Hartford, the following applications for compensation:

> (a) the Second Application For Professional Fees and Costs of the Law Offices of Henry D. Nunez ("Nunez Second Application"), which sought $25,909.50 in fees and $903.83 in costs for the period November 16, 2005 through June 30, 2006 in connection with the Coast Grain suit;

> (b) the First Application for Professional Fees and Costs for Parker, Heitz and Cosgrove, PLLC ("Parker Application"); which sought attorneys fees of $45,433.50 and costs of $6,706.96 for the period December 1, 2006, through June 30, 2006, all in connection with the Coast Grain suit; and

> (c) the Fifth Application of Doak & Associates, P.C. for Professional Fees and Costs ("Doak Fifth Application"), which sought payment for 416.10 hours at $150.00 per hour and costs, detailed in the Application, of $2,931.82 during the period March 1 through June 30, 2006, in connection with the Coast Grain suit, and 6.9 hours at $150.00 per hour in connection with Coast Grain's appeal.

61. By its order entered on about August 23, 2006, after notice and opportunity for
hearing, the Court approved the Nunez Second Application. There were no objections filed.

62. By its order entered on about August 23, 2006, after notice and opportunity for
hearing, the Court approved the Parker Application, with a deduction of about $800.00 in fees requested. There were no objections filed.

63. By its order entered on about August 23, 2006, after notice and opportunity for
hearing, the Court approved the Doak Fifth Application. There were no objections filed.

64. Agri-Systems subsequently paid the fees and costs approved by the Court on the Nunez Second Application; the Parker Application; and the Doak Fifth Application.

65. On about September 19, 2006, Hartford reimbursed Agri-Systems only $15,917.41 of the aggregate $52,140.00 in approved fees and costs paid by Agri-Systems on the Parker Application.

66. In December, 2006, Agri-Systems received from Hartford an additional $20,994.11 in reimbursement on the Parker Application approved by the Court in August, 2006; leaving unreimbursed $15,228.75 of the Parker fees and costs approved by the Court and paid by Agri-Systems in connection with the Coast Grain case.

67. Despite Agri-Systems' demands, substantial communication between Agri-Systems and Hartford's agents, and Agri-Systems' providing detailed supporting documentation, Hartford has refused and continues to refuse to reimburse Agri-Systems any of the approximately $65,890.00 in fees and costs approved on the Doak Fifth Application and paid by Agri-Systems in connection with the Coast Grain suit; refused to reimburse any of the $1,035.00 in fees approved and paid on the Doak Fifth Application in connection with the Coast Grain appeal; refused to reimburse any of the fees and costs approved on the Nunez Second Application; refused to reimburse Agri-Systems any of its estimated $46,497.00 in corporate aircraft expense incurred in connection with the Coast Grain suit; refused to reimburse Agri-Systems for any of about $15,000.00 in "in-house" copying costs incurred in connection with Coast Grain's discovery; refused reimbursement of more than $40,800 of the approximately $58,907.00 Agri-Systems paid directly in deposition transcript and exhibit expenses, expert witness fees and other discovery costs in the Coast Grain suit; and refused to pay or reimburse Agri-Systems for any of the substantial sums by which the Coast Grain settlement was reduced for property damage and repairs allegedly incurred by Coast Grain due to Agri-Systems' negligence.

It is not clear what priority payments Debtor has made to Hartford under the confirmed Amended Plan, but the Court would note that Hartford Fire Insurance amended Proof of Claim No. 60 on September 7, 2007, to reflect an unsecured claim of $113,448.00, of which none is now claimed as priority. Hartford's Amended Proof of Claim filed September 7, 2007, renders Count II of Debtor's Complaint moot. Thus, the sole issue remaining in this Adversary Proceeding is Debtor's breach of contract claim, and of course, Hartford's desire to dismiss such

claim.

Hartford asserts that Debtor's entire Complaint should be dismissed primarily for two reasons. First, that Debtor's claim is barred by the doctrine of res judicata and second, that this Court's lack jurisdiction to hear the matter. Hartford also posits that Debtor's Complaint should be dismissed as to the Hartford Insurance Group and Hartford Specialty Company because they are not proper parties in this proceeding. After careful consideration, the Court concludes that it does not need to address Hartford's *res judicata* or improper party claims because this Court now lacks jurisdiction to hear Debtor's breach of contract claim.

## APPLICABLE LAW and DISCUSSION

The cases of *In re Resorts International, Inc.*, 372 F.3d 154 (3rd Cir. 2004), and *In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005), are instructive and determinative of the jurisdiction issue. *Resorts Int'l* involved a malpractice complaint against accountants of the estate that was brought by the Liquidating Trustee created under the debtor's confirmed Chapter 11 plan. The issue in *Resorts Int'l* was whether the action was core or non-core, and more importantly, whether the action was non-core "related to" in the post-confirmation context. After citing *Pacor, Inc., v. Higgins*, 743 F.2d 984 (3rd Cir. 1984), the *Resorts Int'l* Court held:

> As noted, *Pacor* and its progeny provide the analytical framework for determining "related to" jurisdiction. But most of the cases decided under *Pacor* do not arise post-confirmation or even after the creation of a litigation trust. . .
>
> * * *
>
> After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. . . . At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. . . . Unless otherwise provided by the plan or order confirming the plan, "the confirmation of a plan

> vests all of the property of the estate" in the reorganized debtor. 11 U.S.C. § 1141(b).

*Resorts Int'l*, 372 F.3d at 164-65 (internal citations omitted). Recognizing that "courts do not usually apply *Pacor's* 'effect on the bankruptcy estate' test so literally as to entirely bar post-confirmation bankruptcy jurisdiction", *id*. at 165, the Third Circuit reiterated that "'an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.'" 372 F.3d at 164 (quoting *Pacor,* 743 F.2d at 994). The court in *Resorts Int'l* recognized that "related to" jurisdiction is limited and that it "'does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case.'" *Id*. (quoting *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir.1997)). Thus, "the scope of bankruptcy court jurisdiction diminishes with plan confirmation," *id.* at 165, and the essential inquiry post-confirmation is "whether there is a *close nexus* to the bankruptcy *plan* or proceeding sufficient to uphold bankruptcy court jurisdiction . . . ." *Id.* at 166-67 (emphasis added). "Matters that affect the interpretation, implementation, consummation, execution or administration of the confirmed plan will typically have the requisite close nexus." *Id*. at 167.

The court in *Resorts Int'l* then analyzed varying case circumstances where "close nexus" was prevalent and jurisdiction was found and cases where there was no "close nexus" and jurisdiction was lacking. The Third Circuit in *Resorts Int'l* found *Montana v. Goldin (In re Pegasus Gold Corp.)*, 296 B.R. 227 (D.Nev. 2003), to be instructive. *Resorts Int'l* summarized the district court decision in *Pegasus* as follows:

> A reclamation services corporation ("RSC") was created under a reorganization plan for the purpose of performing short-term reclamation work "in order to

15

>   benefit the overall Plan goal of preserving the jobs of Debtors' employees to thereby maximize the possibility of creditor recovery." *Id.* at 231. The Trustee and RSC contended the state of Montana had represented that RSC would be given preference in the bidding for long-term reclamation work. *Id.* at 232. They brought suit, alleging Montana breached the agreement by hiring a competitor to perform the reclamation work. *Id.* The court upheld bankruptcy court jurisdiction because RSC's failure, and its inability to retain the debtors' employees on account of Montana's breach, "undermine[d] the Plan's objectives for reorganization and the payment of creditors." *Id.* at 233-35.

*Resorts Int'l*, 372 F.3d at 168.

The *Pegasus* district court decision was upheld on appeal on the "close nexus" issue, but was reversed on sovereign immunity grounds. *See In re Pegasus Gold Corp*, 394 F.3d 1189. With respect to jurisdiction and the "close nexus" issue, the Ninth Circuit wrote:

>   We agree that post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction, and that the *Pacor* formulation may be somewhat overbroad in the post-confirmation context. Therefore, we adopt and apply the Third Circuit's "close nexus" test for post-confirmation "related to" jurisdiction, because it recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts. *See id.* at 166-67.

*Pegasus*, 394 F.3d at 1194.  Particularly enlightening to this case is the Ninth Circuit's comment that in reaching its decision in *Pegasus*, it was not "persuaded by the Appellee's argument that jurisdiction lies because the action could conceivably increase the recovery to the creditors.  As the other circuits have noted, such a rationale could endlessly stretch a bankruptcy court's jurisdiction.  *See Resorts Int'l*, 372 F.3d at 170; *Craig's Stores*, 266 F.3d at 391." *Pegasus*, 394 F.3d at 1194, n.1.

The Ninth Circuit in *Pegasus* then went on to discuss the concept of "supplement jurisdiction."  "Pursuant to 28 U.S.C. § 1367, district courts have 'supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction

16

that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id*. at 1195. It is important to understand that the *Pegasus* facts "could affect the implementation and execution of the Plan itself, which specifically called for the creation of RSC [the chosen environmental contractor for reclamation work] and the transfer of debtor money to fund it," so that the "close nexus" to the bankruptcy "related to" jurisdiction was established. *Id*. at 1194. Turning again to *Resorts Int'l*, the opposite result occurred because the Third Circuit found that the "malpractice claims will not affect the interpretation, implementation, consummation, execution, or administration of the Plan." 372 F.3d at 170-71.

In the case *sub judice*, Hartford's September 7, 2007, amendment to Proof of Claim No. 60 was an interesting tactical maneuver because resolution of Count II could have affected the administration of Debtor's Second Amended Plan, which treats Hartford as having an allowed priority claim in the amount of $123,279.00 and a general unsecured claim of $40,837.00. Because Count II could have conceivably conferred "related to" jurisdiction to this Court,[1] this Court could have similarly obtained "supplemental jurisdiction" over Count I. However, by amending its proof of claim and rendering Count II of Debtor's Complaint moot, Hartford has created a situation where this Court no longer has jurisdiction to render a decision on Count I because even though Debtor's breach of contract claim may generate excess funds for creditors, the Ninth Circuit in *Pegasus* has cautioned that this Court does not obtain jurisdiction merely because such action "could conceivably increase the recovery to the creditors." 394 F.3d 1194,

---

[1] The Court would note that Debtor's confirmed Plan of Reorganization and Partial Liquidation may have arguably retained under paragraph 10.02, this Court's jurisdiction to consider claims objection but for the time limitation imposed by paragraph 7.(B) to commence objections to claims within 60 days.

17

n.1.

As Debtor admits, Debtor's Schedules and Statement of Affairs did not disclose a claim against Hartford because "there was no ripe claim against Hartford at the time for breach of its duty to defend and indemnify under [Debtor's] prepetition commercial liability insurance policy." Given the fact that Count I of Debtor's Complaint did not ripen until after Debtor's Second Amended Plan was confirmed and because the Court concludes that such claim does not affect the success of Debtor's Plan, the Court will to enter a separate order as follows:

IT IS ORDERED that the Motion to Dismiss filed on June 11, 2007, by Hartford Insurance Group, Hartford Fire Insurance Company, Hartford Specialty Company and Twin City Fire Insurance Company is GRANTED; and this Adversary Proceeding is DISMISSED.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana